EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Unión Independiente Auténtica (U.I.A.) en representación de todos los empleados de la AAA<br><br>Recurrido<br><br>v.<br><br>Santander Securities LLC; First Bank Puerto Rico y otros<br><br>Peticionario | Certiorari<br><br>2024 TSPR 81<br><br>214 DPR ___ |

Número del Caso:  CC-2022-0467


Fecha:  19 de julio de 2024


Tribunal de Apelaciones:

    Panel Especial


Representantes legales de la parte peticionaria:

  Lcdo. Néstor M. Méndez Gómez
  Lcda. Sara Lydia Vélez Santiago
  Lcda. Liz Arelis Cruz Maisonave


Representante legal de la parte recurrida:

  Lcdo. Wallace Vázquez Sanabria


Materia: Ley Uniforme de Valores – El término de caducidad de dos años de la Ley Uniforme de Valores no aplica automáticamente a una demanda en la que se impugne la venta de unos valores que servían de colateral de unos préstamos comerciales.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

| | | |
|---|---|---|
| Unión Independiente Auténtica (U.I.A) en representación de todos los empleados de la AAA<br><br>Recurrido<br><br>v.<br><br>Santander Securities LLC; First Bank Puerto Rico y otros<br><br>Peticionario | **CC-2022-0467** | |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 19 de julio de 2024.

En esta ocasión nos enfrentamos a la tarea de dilucidar si el Tribunal de Apelaciones actuó correctamente al revocar una sentencia desestimatoria al resolver que a la controversia ante nuestra consideración le aplicaban las disposiciones concernientes al incumplimiento de contrato cuyo término prescriptivo es de quince años, o si, por el contrario, le aplicaba el término de dos años de caducidad que dispone la Ley de Valores, *infra*, por el hecho de que hubiesen alegaciones en la demanda centradas en la venta de valores que servían de colateral para varios contratos de préstamos.

Por los fundamentos que expondremos, resolvemos que una demanda en la que se impugne la venta de unos valores que servían de colateral de unos préstamos comerciales no le aplica automáticamente el término de caducidad de dos años de la Ley de Valores, *infra*.

I

En el año 2018, la Unión Independiente Auténtica (UIA) instó una demanda contra Banco Santander de Puerto Rico (BSPR), ahora FirstBank Puerto Rico,[1] y Santander Securities, LLC (SSLLC). En la demanda, la UIA acumuló las causas de acciones siguientes: incumplimiento contractual fundamentado en el Art. 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018;[2] daños y perjuicios, por transgredir el deber de fiducia impuesto a los corredores-traficantes, a los asesores de inversiones y a los agentes de estos, conforme a las disposiciones de la Sec. 25.1 del Reglamento Núm. 6078 intitulado *Reglamento de la Ley Uniforme de Valores de Puerto Rico* (Reglamento Núm. 6078) por acciones fraudulentas y de mala fe al amparo de los Arts. 1802 y 1210 del Código Civil

---

[1] First Bank Puerto Rico (First Bank), compareció ante el foro primario a tenor con la Regla 22.3 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, para informar que, como resultado de una fusión efectiva el 1 de septiembre de 2020, la institución financiera adquirió los derechos y/o las obligaciones del Banco Santander de Puerto Rico (BSPR) en el caso de epígrafe y solicitó al Tribunal de Primera Instancia que autorizara la sustitución de BSPR por First Bank. Petición de *Certiorari, Moción Solicitando Sustitución de Parte*, *Certiorari*, Apéndice, págs. 275-277.

[2] El Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1 *et seq*. quedó derogado por la Ley Núm. 55-2020, denominada Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 *et seq*. Sin embargo, los hechos del caso y la presentación del pleito ante nuestra consideración ocurrieron durante la vigencia del Código Civil de 1930, por lo cual nos referimos a sus disposiciones en esta Opinión por ser el ordenamiento jurídico aplicable.

de 1930, 31 LPRA ant. secs. 5141 y 3375, más cobro de dinero en virtud del Art. 410(a)(2) de la Ley Núm. 60 de 18 de junio de 1963, conocida como la *Ley Uniforme de Valores* (Ley de Valores), 10 LPRA sec. 890.[3]

En la demanda la UIA alegó que era propietaria de un porfolio de inversiones o valores que SSLLC manejaba en capacidad fiduciaria. Según adujo, para el **31 de octubre de 2005** la cuenta de valores tenía un balance de $10,306,880.62. A su vez, explicó que estos valores servían como colateral -en calidad de prenda- de seis préstamos comerciales que la UIA tenía con BSPR. La UIA sostuvo que el **21 de octubre de 2005** BSPR le remitió una misiva a través de la cual le comunicó que advino en conocimiento de que el Tribunal Federal había emitido una orden de confiscación mediante la cual se habían embargado ciertos fondos de la UIA depositados en SSLLC. En dicha comunicación, también le notificó que el presunto embargo había causado un incumplimiento con relación a los préstamos y que, por lo tanto, la deuda era líquida y exigible. A su vez, le avisó que ejecutaría la garantía mediante la venta de los valores que SSLLC manejaba.

_____

[3] La Ley Núm. 60 de 18 de junio de 1963, conocida como la *Ley Uniforme de Valores* (Ley de Valores), 10 LPRA sec. 851 *et seq.* sufrió varias enmiendas, entre las más importante las realizadas por: la Ley Núm. 77-1991, la Ley Núm. 36-1999, y la Ley Núm. 422-2000. La Ley Núm. 422-2000 derogó el Art. 401 de la Ley de Valores, *supra*, y atemperó dicho estatuto a las disposiciones de la ley federal titulada Gramm-Leach-Biley Act of 1999, 15 U.S.C. sec. 6801 *et seq.* En el caso de autos se utiliza la Ley de Valores, *supra*, con las enmiendas realizadas hasta el 21 de septiembre de 2004 en virtud de la Ley Núm. 390-2004, por ser esta la ley aplicable a los hechos de autos.

Sobre este particular, la UIA alegó que le notificó a BSPR que no había incurrido en incumplimiento contractual con los préstamos comerciales como para que la institución financiera declarara los préstamos vencidos, líquidos y exigibles y que, por ello, procediera a ejecutar la garantía de estos mediante la venta de los valores. La UIA afirmó que le advirtió a BSPR que no avalaba ni autorizaba la venta de los valores y que de este ejecutar las garantías mobiliarias le ocasionaría daños e inestabilidad financiera. Adujo que, a pesar de sus reiteradas objeciones, el 4 de noviembre de 2005 advino en conocimiento que BSPR le solicitó a SSLLC la venta de los valores y que, para ello, se realizaron once transacciones separadas por la suma de $7,361,107.17. De este modo, planteó que SSLLC y BSPR transgredieron los términos de los contratos de préstamo entre BSPR y la UIA.

Además, la UIA alegó que, aun si hubiese incumplido con los términos de los préstamos comerciales, BSPR estaba obligado a brindarle una oportunidad para subsanar el incumplimiento. Así, sostuvo que BSPR actuó contrario a sus obligaciones contractuales lo que presuntamente le ocasionó daños económicos y financieros de gran magnitud y difíciles de estimar. *Como consecuencia del incumplimiento contractual y de la venta no autorizada de los valores*, la UIA solicitó indemnización por concepto de pérdida del esperado incremento diario en el valor de los activos vendidos; una estimación de rendimiento por los 14 años de incumplimiento que aumenta

diariamente, más intereses por mora sobre las sumas adeudadas.[4]

Posteriormente, BSPR y SSLLC solicitaron la desestimación de la demanda al amparo de la Regla 10.2 (5) de Procedimiento Civil de Puerto Rico, 31 LPRA Ap. V. Argumentaron que la controversia en este caso estaba sujeta a una cláusula contractual de arbitraje y que aún si se determinara la inaplicabilidad de la cláusula, la causa de acción había caducado porque la reclamación se regiría por la Ley de Valores, supra, que tiene un término de dos años. Adujeron que, en vista de que la venta de los valores que reclama la UIA ocurrió en noviembre de 2005, la causa de acción caducó en noviembre de 2007.[5]

Para sustentar sus posturas, BSPR y SSLLC anejaron dos documentos suscritos al momento de consentir uno de los seis préstamos en controversia. Estos documentos son: (1) el Exhibit núm. 1 intitulado *New Account Form* y *New Account Agreement*, suscrito por el SSLLC y la UIA para la apertura de una de las cuentas de inversiones; y (2) el Exhibit núm. 2 intitulado *Promissory Note, Pledge and Control Agreement*, con fecha del 27 de septiembre de 2005 y firmado por todas las partes involucradas en el presente litigio.[6]

---

[4] Petición de *Certiorari*, *Demanda*, Apéndice, págs. 38-43.

[5] Íd., *Moción de Desestimación*, Apéndice, págs. 57-77.

[6] La moción de desestimación del peticionario no cumple con los requisitos contenidos en la Regla 10.2 (5) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 10.2 (5) sobre la conversión de una moción de desestimación en una de sentencia sumaria. Esto, debido a que  los documentos incluidos

En respuesta, la UIA se opuso parcialmente a la moción de desestimación y desistió de la reclamación contra SSLLC. La UIA reconoció que el contrato con SSLLC estipuló que las reclamaciones estarían sujetas a un procedimiento de arbitraje y que la causa de acción en su contra había prescrito toda vez que, conforme a la Ley de Valores, *supra*, había transcurrido el término de dos años que dispone el Art. 410(e) de esa legislación.[7] Así, solicitó que se dictara sentencia desestimando con perjuicio la causa de acción contra SSLLC.

Sin embargo, rechazó que la cláusula de arbitraje le aplicara a los seis contratos de préstamos suscritos con BSPR ni debía imputársele el término de caducidad de la Ley de Valores, *supra*, para presentar la demanda. De acuerdo con la UIA, las reclamaciones contra BSPR son por este haberla declarado en incumplimiento con los seis contratos de préstamo y la causa de acción instada en contra SSLLC se debió a la venta sin autorización de los valores que servían de colateral de los préstamos.[8]

Eventualmente, el Tribunal de Primera Instancia dictó una *Sentencia Parcial* mediante la cual desestimó con

---

en la moción de desestimación no constituyen materias no contenidas en la demanda. *Capeles v. Alejandro*, 143 DPR 300, 309 (1997).

[7] Artículo 410(e) de la Ley de Valores, *supra*, 10 LPRA sec. 890(e).

[8] Petición de *Certiorari*, *Oposición a Moción de Desestimación*, Apéndice, págs. 81-88.

perjuicio la demanda contra SSLLC.[9] Sin embargo, luego de varios trámites que son innecesarios pormenorizar, el tribunal de instancia notificó una *Sentencia* mediante la cual declaró *Con Lugar* la moción de desestimación.[10] Para llegar a esta determinación, el foro primario consideró los documentos que BSSPR y SSLLC incorporaron con la moción de desestimación. Así, evaluó el *Promisory Note, Pledge and Control Agreement* que todas las partes en la demanda firmaron el 27 de septiembre de 2005 y confirmó la alegación concerniente a que la relación comercial entre las partes consistió en que la UIA tomó préstamos al BSPR y que estaban garantizados por los valores que constaban en sus cuentas de corretaje con SSLLC. Señaló que, en ese contrato, SSLLC contrajo obligaciones, hace representaciones y ofrece garantías a las demás partes firmantes.

A su vez, acentuó que, si bien los contratos de prenda se constituyen para asegurar el cumplimiento de una obligación principal, las disposiciones relativas a este tipo de contrato son de carácter general y que, en el presente caso, gobiernan las leyes especiales.[11] A raíz de lo anterior, el Tribunal de Primera Instancia quedó convencido de que la reclamación de la UIA contra BSPR le aplica la Ley de Valores, *supra*. El foro primario entendió que de las

---

[9] Íd., *Sentencia Parcial del Tribunal de Primera Instancia*, Apéndice, pág. 112.

[10] Íd., *Sentencia del Tribunal de Primera Instancia*, Apéndice, págs. 284-299.

[11] Íd., pág. 296.

alegaciones de la demanda resultó claro la existencia de que la reclamación de la UIA es una típica de valores. En específico, señaló que la UIA alegó que SSLLC —una entidad cuya actividad principal es la venta de valores— con BSPR vendieron sus valores de inversión sin autorización, en concierto y común acuerdo para beneficiarse mutuamente y perjudicarla. Añadió que la Ley de Valores, *supra*, aplica con especialidad a aquellas relaciones comerciales cuando una de las partes se dedica al negocio de valores. De este modo, sostuvo que precisamente esa era la relación comercial entre las partes descrita por la UIA en la demanda y confirmada con el *Promissory Note, Pledge and Control Agreement*.

Asimismo, subrayó que la UIA reconoció que a SSLLC le aplican las disposiciones de la Ley de Valores, *supra*, ya que las alegaciones en la demanda aluden al *Promissory Note, Pledge and Control Agreements*. Así, coligió que la posición de la UIA resultaría en un contrasentido porque pretende aplicar dos disposiciones legales distintas a tres partes firmantes de un mismo contrato con relación a la misma alegada pérdida. Es decir, a juicio del Tribunal de Primera Instancia, era aplicar la Ley de Valores a SSLLC; el Código Civil de 1930 al BSPR; y el remedio de ambas disposiciones a la UIA, con términos de caducidad o prescripción distintos. Esto, a pesar de que lo único que se reclamó es la pérdida surgida como consecuencia de la alegada venta ilegal de los valores que ejecutó SSLLC como corredor-traficante de

valores, la cual presuntamente se ejecutó por órdenes de BSPR.

**Por otro lado, el Tribunal de Primera Instancia indicó que la ausencia de invocar una reclamación al amparo de la Ley de Valores, *supra*, contra BSPR, no cambia la realidad de la verdadera naturaleza de la reclamación. Esto es que, conforme a lo resuelto en *Olivella Zalduondo v. Triple S*, 187 DPR 625 (2013), para determinar si procede o no la aplicación de dicho estatuto se debe analizar si la controversia trata sobre una transacción de valores llevada a cabo por entidades dedicadas a ese negocio.** Así, concluyó que la reclamación del pleito de autos contra BSPR es una de valores que se rige bajo la Ley de Valores, *supra*, y está, pues, sujeta al período de caducidad de dos años del Artículo 410(e) de ese cuerpo legal. Finalmente, señaló que la alegada venta no autorizada ocurrió entre el 1 y 4 de noviembre de 2005 y el término de dos años expiró, a más tardar, el 4 de noviembre de 2007. En vista de que la demanda se presentó el 26 de marzo de 2018, determinó que la reclamación instada contra BSPR caducó.[12]

En desacuerdo, la UIA acudió al Tribunal de Apelaciones y reiteró que de una lectura de la demanda surge que se alegaron causas de acciones distintas y separadas contra cada uno de los codemandados. La UIA señaló que presentó una causa de acción por incumplimiento de contrato contra BSPR porque

_____

[12] Íd., pág. 299.

la declaró en incumplimiento con los contratos de préstamos y porque procuró el cobro de estos. En la alternativa, adujo que BSPR incumplió con sus obligaciones contractuales al no brindarle oportunidad de subsanar el supuesto incumplimiento. Finalmente, señaló que a la causa de acción de incumplimiento contractual no le aplican las disposiciones de la Ley de Valores, *supra*.[13]

Con el beneficio de la comparecencia de ambas partes, el foro apelativo intermedio revocó al Tribunal de Primera Instancia y dispuso que la controversia de autos no constituye una transacción de valores, por lo cual no está sujeta al término de dos años dispuesto en el Art. 410(e) de la Ley de Valores, *supra*. Así, concluyó que el presente caso versa sobre un incumplimiento de contrato regulado por el Código Civil, por lo que el término aplicable es el de quince años, según dispuesto en el Art. 1864 del Código Civil de 1930, 31 LPRA ant. sec. 5294. Consecuentemente, determinó que, de prevalecer la UIA en su reclamo, le corresponde al foro primario auscultar cuáles son los remedios a los que BSPR tiene derecho, incluyendo el contenido en la Ley de Valores, *supra*.[14]

Inconforme, BSPR acudió ante esta Curia y señaló que el Tribunal de Apelaciones erró al revocar la sentencia sin fundamento ni discusión alguna que lo justificara y limitarse

_____

[13] Íd., *Apelación*, Apéndice, págs. 19-37.

[14] Íd., *Sentencia del Tribunal de Apelaciones*, Apéndice, pág. 18.

a concluir que la Ley de Valores, *supra*, es inaplicable. BSPR reprodujo los planteamientos de que este caso está centrado en transacciones de valores. Esto, porque de las alegaciones de la demanda de la UIA surge el reclamo de la venta desautorizada de los valores que servían de colateral de los seis préstamos y que, presuntamente y en contubernio, BSPR y SSLLC los vendieron mediante declaraciones falsas. Afirma que la desestimación con perjuicio de la demanda contra SSLLC no cambia la naturaleza del reclamo y la esencia del remedio que procura: recuperar las pérdidas del valor en el mercado de las inversiones y los ingresos dejados de generar por estas, como resultado de la alegada venta no autorizada e ilegal. Por ende, concluye que a la causa de acción contra BSPR le aplica la Ley de Valores, *supra*, que esta caducó el 4 de noviembre de 2007 y que, por ello, procedía su desestimación.

Tras ser expedido el recurso, contar con la comparecencia de todas las partes y analizada sus posturas, procedemos a resolver la controversia ante nos.

II

**A.    *El remedio civil en la Ley de valores estatal y federal***

La Ley de Valores, *supra*,[15] se aprobó con el propósito de proteger a los inversionistas y al público en general mediante la exigencia de ciertos requisitos a las personas que se dediquen al negocio de valores y la creación de un

_____

[15] Recalcamos que la Ley de Valores, *supra*, sufrió varias enmiendas y, en el caso de autos se aludirá a la legislación con las enmiendas realizadas hasta el 21 de septiembre de 2004 en virtud de la Ley Núm. 390, supra, por ser esta la ley aplicable a los hechos de autos.

organismo gubernamental con poderes de supervisión y fiscalización sobre diversas fases del negocio, a los fines de evitar que se incurra en prácticas fraudulentas en el curso de este.[16] Expresamente, la Exposición de Motivos indicó que la ley se creó "para prohibir prácticas fraudulentas en relación con valores; para requerir la inscripción de los corredores-traficantes, agentes, asesores de inversiones y valores; y para hacer uniforme la ley de referencia".[17]

En Puerto Rico, esta legislación tuvo su origen en el *Uniform Securities Act of 1956* (*Ley de 1956*), App. Unif. Securities Act 1956 sec. 101 *et seq.*, modelo de ley redactado por la *National Conference of Commissioners of Uniform State Law*, conocida posteriormente como la *Uniform Law Commission*.[18] Entre las disposiciones adoptadas en nuestra Ley de Valores, *supra*, están las contenidas en la sec. 410(a)(2) de la *Ley de 956.*

En lo que nos atañe, la Sec. 410(a)(2) de la *Ley de 1956* contiene un remedio civil dirigido contra todo inversionista que ofrezca o venda un valor por medio de falsas representaciones u omisiones. Dicha sección leía como sigue:

SECTION 410, [Civil Liabilities.]
(a) Any person who
(1) […]

———————————

[16] *Olivella Zalduondo v. Triple-S*, 187 DPR 625, 635 (2013), citando el Informe Conjunto de las Comisiones de lo Jurídico Civil e Industrias y Comercio del Senado de Puerto Rico, 17 Diario de Sesiones T. 4, pág. 1629.

[17] Ley Núm. 60 de 18 de junio de 1963, Leyes de Puerto Rico 137.

[18] *Véase*, entre otras, Exposición de Motivos de la Ley Núm. 114-1996, de la Ley Núm. 167-1999, y de la Ley Núm. 422-2000.

(2) offers or sells a security **by means of** any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity **to recover the consideration paid for the security**, together with interest at six percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, **or for damages if he no longer owns the security**. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six percent per year from the date of disposition. (Énfasis nuestro) App. Unif. Securities Act 1956 sec. 410 (a) (2).

Según la precitada sección, para que el demandante pueda establecer un caso *prima facie* a su amparo debe probar lo siguiente: (1) que hizo una compra; (2) que involucraba un valor; (3) que la compra tuvo lugar en la jurisdicción donde se insta la causa de acción; (4) que el valor fue vendido por un inversionista; (5) que la venta del valor se hizo por medio de una declaración falsa de un hecho material o la omisión de un hecho material; (6) que al momento de comprar el valor, el demandante desconocía que la declaración o la omisión era falsa, y (7) si el demandante está en posesión del valor, este tenga la intención de devolverlo a cambio de recuperar lo pagado por el valor, o, en el caso de no estar

en posesión del valor, desee que se le indemnice por daños.[19]

Ahora bien, la causa de acción reconocida en la sec. 410(a)(2) tiene dos homólogos en la esfera federal, a saber: (1) la sec. 12(a)(2) de la *Security Act of 1933 (*Ley Reguladora de Bolsas de 1933*)*, 15 USC sec. 77L(a)(2),[20] y (2) la Regla 10b-5 del *Securities Exchange Act of 1934* (Ley Reguladora de Bolsas de 1934*)*, 17 CFR sec. 240.10b-5,[22]

_____

[19] 12A J.C. Long, M.J. Kaufman & J. M. Wunderlich, *Blue Sky Law*, Ch 9 sec. 9.34 (2023).

[20]  Dicha sección lee como sigue:

"(a) In general

Any person who--
(1) offers or sells a security in violation of section 77e of this title, or

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material  fact  necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

[22]  *Véase*, 12A J.C. Long, *supra*, Ch. 9 sec. 9:5 y la nota al calce uno (1) de la sec. 9:34. Por su parte, la Regla 10b-5 dispone lo siguiente:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

promulgada al amparo de la sec. 10(b) de la Ley Reguladora de Bolsas de 1934.[23] Por ello, los estados tienden a consultar la ley federal y utilizar sus precedentes como una guía para interpretar sus propias leyes de valores.[24]

De entrada, la Ley Reguladora de Bolsas de 1933 y la Ley Reguladora de Bolsas de 1934 constituyen cuerpos de ley interrelacionados del esquema regulatorio federal que rige las transacciones de valores.[25]

En cambio, ambas disposiciones de ley estatuyen que los remedios que estas proveen son adicionales a cualquier otro que tenga la parte promovente.[26] Asimismo, se ha indicado que estas no se excluyen la una a la otra, por lo que se permite que un demandante inste simultáneamente los remedios que proveen.[27] **También, se ha resuelto que la Ley Reguladora de Bolsas de 1933 y la Ley Reguladora de Bolsas de 1934 no le**

_____

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

[23] 15 USC sec. 78j (b).

[24] 12A J.C. Long, *supra*, Ch. 9 sec. 9:5.

[25] *Herman & MacLean v. Huddleston*, 459 US 375, 380 (1983). Hacemos constar que, tanto la Ley Reguladora de Bolsas de 1933 como la Ley Reguladora de Bolsas de 1934 fueron enmendadas en el año 1995 por el *Private Securities Litigation Reform Act. Cyan, Inc. v. Beaver Conty Employees Retirement Fund*, 583 US 416, 422 (2018).

[26] Se hace constar que sobre las disposiciones de antifraude el Tribunal Supremo de Estados Unidos ha expresado lo siguiente:

"[T]he antifraud provisions of the securities laws are not coextensive with common law doctrines of fraud. Indeed, an important purpose of the federal securities statutes was to rectify perceived deficiencies in the available common law protections by establishing higher standards of conduct in the securities industry." *Herman & MacLean v. Huddleston*, supra, págs. 388-389.

[27] *Herman & MacLean v. Huddleston*, supra, pág. 690.

**impiden a un demandante o a un grupo menor de cincuenta demandantes el derecho de ejercer cualquier causa de acción que pueda existir al amparo de la ley estatal.**[28]

Ahora bien, el remedio civil que provee la Ley Reguladora de Bolsas de 1933 está contenido en la sec. 12(a)(2).[29] Esta sección dispone que cualquier persona que ofrezca o venda un valor por medio de una declaración falsa de un hecho material o mediante la omisión de un hecho material podrá ser responsable a la persona que le compra el valor.[30] *De modo, que este apartado circunscribe el remedio privado que provee, al comprador de un valor.*[31]

---

[28] *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 US 71, 87 (2006). Destacamos que ningún demandante puede litigar en la corte estatal causas de acción al amparo de la *Ley Reguladora de Bolsas de 1934. Cyan, Inc. v. Beaver County Employees Retirement Fund*, supra, pág. 421.

[29] La sec. 10(b) de la Ley Reguladora de Bolsas de 1934 lee como sigue:

"Any person who—

(1) […]
(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 USC sec. 77L (a) (2).

[30] 17A J.W. Hicks, *Civil Liabilities: Enforcement & Litigation Under the 1933 Act*, Ch. 6 sec. 6:32 (2023) y 26 M.J. Kaufman, *Securities Litigation Damages*, Ch. 7 sec. 7:16 (2023). Hacemos contar que las causas de acción bajo esta sección involucran ofertas de valores recién registrados, mientras que la  sec. 10(b) la *Ley Reguladora de Bolsas de 1934* trata de

Por otro lado, al amparo de la Regla 10b-5 de la Ley Reguladora de Bolsas de 1934,[32] un demandante puede obtener uno o varios de estos remedios: (1) compensación en daños, (2) remedios en equidad, o (3) la restitución.[33] Sin embargo, le corresponde al tribunal determinar cuál remedio es el apropiado para el demandante.[34]

**Respecto a los daños, esta regla hace compulsorio que el fraude esté centrado en una transacción de valores.**[35]

Cuando se alude a que el fraude debe estar centrado en una transacción de valores a lo que se refiere es que **debe existir un nexo entre el fraude y la compra o venta del valor**,[36] sin confundirse este concepto con el de la causalidad. En este contexto, se analiza la confianza que el vendedor despertó en el comprador con la representación falsa y si esta es excusable. Así, para determinar si una persona descansó en una declaración u omisión conducente a error, el tribunal debe prestar atención en si la apariencia engañosa causó que el demandante comprara o vendiera un valor.[37]

_____

valores vendidos en mercados secundarios. *Slack Technologies, LLC v. Pirani*, supra, pág. 1437.

[31] Íd.

[32] *Véase*, nota al calce núm. 20.

[33] 5E A.S. Jacobs, *Disclosure and Remedies Under the Securities Laws*, Ch. 20 sec. 20:2 (2023).

[34] Íd.

[35] Íd., sec. 20:3.

[36] 5B A.S. Jacobs, *supra*, Ch. 9 sec. 9:3.

[37] 5C A.S. Jacobs, *supra*, Ch. 12 sec. 12:81.

Es importante saber, que en cualquier reclamación al amparo de la Regla 10b-5, *supra*, el demandante con legitimación activa está obligado a probar los elementos que instituyó esta regla y debe, además, impugnar cualquier defensa que plantee el demandado. Según *Stoneridge Inv. v. Partners, LLC*, 552 US 148, 157 (2008), el Tribunal Supremo de Estados Unidos estableció los siguientes elementos que deben ser probados por la parte demandante en cualquier reclamación al amparo de la Regla 10b-5, *supra*: (1) a material misrepresentation or omission by the defendant; (2) scienter;[38] (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.[39]

Por otro lado, nuestra Ley de Valores, *supra*, agrupa a los inversionistas en dos categorías, a saber: inversionista acreditado e inversionista cualificado.[40] El Art. 100(n) de la Ley de Valores, *supra*, define a un inversionista acreditado como cualquier persona que cumpla con los requisitos establecidos en las categorías dispuestas en el Tomo 17 del *Code of Federal Regulations* sec. 230.501(a), 17 CFR sec.

---

[38] Lo que supone este término es que debe existir una intención por parte del demandado de engañar, manipular o defraudar. *Aron v. Securities and Exchange Commission*, 446 US 680, 686 (1980).

[39] *Stoneridge Inv. v. Partners, LLC*, 552 US 148, 157 (2008). *Véase*, además, *Matrixx Initiatives, Inc. v. Siracusano*, 563 US 27, 37-38 (2011) y 5C A.S. Jacobs, supra, Ch. 12 sec. 12:81.

[40] La definición de inversionista acreditado se adoptó mediante la Ley Núm. 36-1999. Mientras que el concepto de inversionista cualificado se introdujo mediante la Ley Núm. 422-2000.

230.501 (a), o cualquier disposición similar que enmiende o sustituya dicha reglamentación, o aquella persona que el emisor entienda que razonablemente cumple con dichos requisitos al momento de la venta.[41]

Por su parte, la sec. 230.501 (a) del Tomo 17 del *Code of Federal Regulations*, entre otras cosas, estatuye que un inversionista acreditado será cualquier banco según definido en la sec. 3(a)(2) de la Ley Reguladora de Bolsas de 1933;[42] *broker*;[43] asesor de inversiones;[44] compañía de inversiones;[45] o entidad,[46] que no haya sido creada con el propósito de adquirir valores, pero que sea dueña de inversiones que excedan los $5,000,000.[47]

En cuanto al inversionista cualificado, el Art. 100(w) de la Ley de Valores, *supra*, le atribuye el mismo significado que el otorgado a la frase *qualified investor* de la sec.

---

[41] *Véase*, Art. 100 (n), 10 LPRA sec. 881(n). Este inciso se incorporó a la Ley de Valores, supra, mediante la Ley Núm. 36-1999.

[42]  17 CFR sec. 230.501(a)(1). 15 USC sec. 77a et seq.

[43] Íd.

[44] Íd. El Art. 100 (f) define a un asesor de inversiones como:
[C]ualquier persona que mediante remuneración se dedique al negocio de asesorar a otros, ya sea directamente o a través de publicaciones o escritos, sobre el precio de los valores, o sobre la conveniencia de invertir, comprar o vender valores, o que, por remuneración y como parte de un negocio establecido, emita o promulgue análisis o informes sobre valores. […] 10 LPRA sec. 881 (f).

[45] Íd.

[46] 17 CFR sec. 230.501(a)(9).

[47] Para propósito de la sec. 230.501(a)(9) la definición de inversión será la descrita en el Tomo 17 secc. 2a51-1(b) del *Investment Company Act of 1940*.

3(a)(54)[48] de la *Ley Reguladora de Bolsas de 1934* o cualquier regla u orden adoptada por la *Securities Exchange Commision* a su amparo para interpretarla.[49] Según la sec. 3(a)(54)(A), 15 USCA sec. 78c(a)(54), este concepto incluye bancos, *brokers* y compañías dedicadas a las cuentas de inversiones, siempre que estas estén registradas en el *Securities Exchange Commision.*

Por otro lado, debemos tener claro qué es un valor y lo que la Ley de Valores, *supra*, define como fraude o engaño. Sobre estos conceptos el Art. 100 expone lo siguiente:

> (d) Fraude, engaño, y defraudar -No estarán limitados a la definición de dolo según el Código Civil.
> .    .    .    .    .    .    .    .
> (l) Valor -Significará cualquier pagaré, acción, acciones en cartera, bono, vale, comprobante de deuda, certificado de interés o participación en algún convenio de distribución de beneficios o sociedad, certificado de valores fiduciarios en garantía, certificado de preorganización o subscripción, acción transferible, contrato de inversión, certificado de fideicomiso con derecho a voto, certificado de depósito en garantía, cuota de interés indiviso en petróleo, gas u otros derechos sobre minerales, o, en general, cualquier interés o instrumento conocido comúnmente como "valor", o cualquier certificado de interés o participación en cualquiera de los

---

[48] 15 USC Cap. 2B sec. 78c(54)(A).

[49] 10 LPRA sec. 881(w). La sec. 3(a)(54)(A), 15 USCA sec. 78c(a)(54), define, en lo pertinente, a *qualified investor* como:

(i) **any investment company** registered with the Commission under section 8 of the Investment Company Act of 1940 [15 U.S.C. 80a-8];
(ii) **any issuer eligible for an exclusion from the definition of investment company** pursuant to section 3(c)(7) of the Investment Company Act of 1940 [15 U.S.C. 80a-3(c)(7)];
(iii) **any bank** (as defined in paragraph (6) of this subsection), **savings association** (as defined in section 3(b) of the Federal Deposit Insurance Act [12 U.S.C. 1813(b)]), **broker, dealer, insurance company** (as defined in section 2(a)(13) of the Securities Act of 1933 [15 U.S.C. 77b(a)(13)]), or **business development company** (as defined in section 2(a)(48) of the Investment Company Act of 1940 [15 U.S.C. 80a-2(a)(48)])"[…]

> precedentes valores, certificado temporero o provisional o recibo por los mismos, garantía de dichos valores o instrumentos de autorización u opción o derecho para subscribirlos. "Valor" no incluirá ninguna póliza de seguro, o de seguro dotal, ni contrato de anualidades mediante la cual una compañía de seguros se compromete a pagar una suma determinada de dinero, sea ésta pagadera en suma englobada o periódicamente, durante la vida de la persona o en cualquier otro período especificado.[50]

Ahora bien, la Ley de Valores, *supra*, se divide en cuatro partes fundamentales. La primera prohíbe prácticas fraudulentas con relación al negocio de valores.[51] La segunda parte de la ley exige la inscripción de todos los corredores-traficantes, agentes y asesores de valores,[52] mientras que en la tercera parte se exige la inscripción de todos los valores propiamente.[53] Por último, en la cuarta parte el estatuto establece las disposiciones generales para la administración de la ley.[54]

En el Art. 410 de las disposiciones generales de la ley, se contempla una acción civil. En lo que concierne a la controversia ante nos, el inciso (a)(2) del Art. 410 dispone lo siguiente:

(a)   Cualquier persona que:

_____

[50]Las definiciones consignadas responden a la ley aplicable al momento de los hechos de este caso, la Ley Núm. 422-2000, (2000 [Parte 3] Leyes de Puerto Rico, 2906-2910).

[51] Arts. 101-103 de la Ley de Valores, *supra*, 10 LPRA secs. 851-853.

[52] Arts. 201-204 de la Ley de Valores, *supra*, 10 LPRA secs. 861-864.

[53] Arts. 301-307 de la Ley de Valores, *supra*, 10 LPRA secs. 871-877.

[54] Arts. 402-418 de la Ley de Valores, *supra*, 10 LPRA secs. 882-898.

(1) […]

(2) Ofrezca o venda un valor por medio de una declaración falsa sobre un hecho material, o mediante omisión de consignar un hecho material necesario para evitar que las declaraciones formuladas, a la luz de las circunstancias bajo las cuales se hicieron, conduzcan a error (desconociendo el comprador la falsedad o la omisión), y que no sostenga el peso de la prueba de que no sabía, y que ejercitando una prudencia razonable, no pudo tener conocimiento, de la falsedad u omisión, *será responsable a la persona que le compre el valor, quien podrá entablar demanda para recobrar el precio pagado por el valor*, además de intereses al tipo de interés aplicable a sentencias judiciales según provisto por el reglamento aprobado a estos efectos por la Junta Financiera creada por la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, [conocida como la *Ley de la Oficina del Comisionado de Instituciones Financieras*, 7 LPRA sec. 2001 *et seq*.] a partir de la fecha en que se hizo el pago, costas y razonables honorarios de abogado menos la cuantía de cualquier ingreso que haya recibido derivado del valor, al ofrecer devolver dicho valor, *o por daños y perjuicios, si él ya no es dueño del valor. Los daños y perjuicios serán la cantidad que se recobraría al devolver el valor, menos su precio <u>cuando el comprador</u> dispuso del mismo, más interés al tipo de interés aplicable a sentencias judiciales según provisto por el reglamento aprobado a estos efectos por la Junta Financiera creada por la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, a partir de la fecha en que se dispuso del valor.*[55] (Énfasis y subrayado nuestro).

. . . . . . . .

Ahora bien, este Tribunal ha abordado o interpretado la Ley de Valores, *supra*, en contadas ocasiones. Veamos.

En *PaineWebber, Inc. v. First Boston, Inc.*, 136 DPR 541 (1994), aconteció que First Boston, Inc. (First Boston) **le vendió a** PaineWebber Incorporated of Puerto Rico (PainWebber)

---

[55] El texto responde a la ley aplicable al momento de los hechos de este caso, Ley Núm. 77 de 28 de agosto de 1991 actualmente codificado en la 10 LPRA sec. 890 (a) (2).

un valor presuntamente exento de contribuciones, el cual fue posteriormente revendido. A los dos años de la compra, PaineWebber se enteró que el valor adquirido no era exento. Sin embargo, PaineWebber demandó a First Boston tres años después de la compra del valor por incumplimiento de contrato. Con esta relación fáctica, y al amparo del Art. 410(e) de la Ley de Valores, *supra*, resolvimos que la causa de acción de PaineWebber estaba prescrita porque transcurrió más de dos años desde consumado el contrato hasta la presentación de la demanda.

Por su parte, en *Olivella v. Triple-S*, 187 DPR 625 (2013), expresamos que no "toda controversia que involucrara un valor estaría sujeta a ese estatuto, sino de que los hechos particulares de cada controversia deben coincidir con los supuestos estatutarios".[56] Es decir, enunciamos que la Ley de Valores, *supra*, no aplica automáticamente a todas las controversias en las que se vea involucrado un valor. Asimismo, indicamos que el estatuto regula un tipo específico de relación comercial.[57] En específico, se trata de relaciones mercantiles entre inversionistas y entidades que se dedican al negocio de valores, o entre varias entidades de esta naturaleza.[58] De modo que, la Ley de Valores:

> [S]e concentra, por un lado, en evitar que entidades dedicadas a dicho negocio cometan fraude en

---

[56] *Olivella v. Triple-S*, supra, págs. 642 y 645.

[57] Íd., pág. 646.

[58] Íd.

las transacciones de valores y, por el otro, en asegurarse de que tanto los valores que se intercambien como las personas que se dedican a este tipo de transacción estén debidamente registradas.[59]

Sin embargo, hemos dispuesto que la Ley de Valores, *supra*, no necesariamente aplica únicamente en aquellos casos en los que se alegue fraude, aunque ciertamente la controversia debe ser una centrada en una transacción de valores que involucre inversionistas o, al menos, entidades cuya actividad principal sea el negocio de valores.[60] Por eso, delimitamos el criterio que se debe evaluar para saber si nos encontramos ante una causa de acción que le aplique la Ley de Valores, *supra*. En esencia, indicamos que

> [P]ara determinar si aplica la Ley Uniforme de Valores, debe analizarse si la controversia trata sobre una transacción de valores llevada a cabo por entidades dedicadas a ese negocio, sin perder de perspectiva que el propósito principal, aunque no exclusivo, de dicha Ley es evitar el fraude y asegurar la debida inscripción de los valores y sus corredores.[61]

**B.   *Causa de acción en casos en los que un vendedor de valores transgreda algún deber fiduciario***

El 19 de enero de 2000 se promulgó, al amparo de la Ley de Valores, supra, el Reglamento Núm. 6078 (Reglamento Núm. 6078) intitulado *Reglamento de la Ley Uniforme de Valores de Puerto Rico*. El Art. 25, Sec. 25.1 del Reglamento Núm. 6078 les impuso a los corredores-traficantes, a los asesores de

---

[59] Íd.

[60] Íd.

[61] Íd.

inversiones y a los agentes de estos, la obligación de observar "los más altos estándares de deberes fiduciarios hacia sus clientes". En atención a lo anterior, las Secs. 25.3-25.7 del Reglamento Núm. 6078 enumeraron las prácticas consideradas como deshonestas y antiéticas, entre ellas, llevar a cabo transacciones en o para la cuenta de un cliente sin la autorización de este y vender un valor por medio de una declaración falsa de un hecho material o la omisión de un hecho material.[62]

## C. Concurrencia de acciones

Mediante un contrato, una persona se obliga a dar una prestación a otra.[63] Una vez constituido el contrato este se rige por el principio de *pacta sunt servanda*. Este principio está comprendido en al Art. 1044 del Código Civil de 1930, 31 LPRA ant. sec. 2994, el cual establece que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de estos.[64] Sin embargo, una vez perfeccionado el contrato las partes no sólo se obligan al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[65]

---

[62] *Véanse* las Secs. 25.3.1, la cual hace alusión a los Arts. 101, 102, 103, 201 y 301 de la Ley de Valores, y la Sec. 25.3.7 del Reglamento Núm. 6078.

[63] *PRFS v. Promoexport*, 187 DPR 42, 52 (2012); Artículo 1044 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 2994.

[64] *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014).

[65] Art. 1210 del Código Civil de 1930, 31 LPRA ant. sec. 3375.

Ahora bien, hemos expresado repetidamente sobre la concurrencia de acciones *ex contractu* y *ex delictu*.[66] Una causa de acción *ex contractu* atiende los daños derivados del incumplimiento de contrato y aplica en aquellas acciones que el reclamo está fundamentado en el quebrantamiento o incumplimiento de una obligación contractual.[67] Este tipo de acción procura indemnizar de daños que se derivan del incumplimiento de obligaciones acordadas y que necesariamente exige "que al daño le preceda una relación jurídica entre las partes concernidas".[68]

Por otro lado, la transgresión o la culpa extracontractual acarea una acción *ex delito* que surge del incumplimiento de la regla cardinal en la que descansa la sana convivencia humana: no causar daño a los demás o principio de *alterum non laedere*.[69] Este tipo de acción se encuentra preceptuada en el Art. 1536 del nuevo Código Civil de 2020, 31 LPRA sec. 10801, antiguo Art. 1802 del Código Civil de 1930, *supra*, y se distingue porque la responsabilidad frente al perjudicado no requiere la existencia de una relación jurídica previa entre las partes concernidas.[70]

_____

[66] Consejo de Titulares del Condominio Balcones de San Juan, 208 DPR 761, 780 (2022).

[67] *Consejo de Titulares v. Mapfre*, 208 DPR 761, 781 (2022).

[68] *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 909 (2012).

[69] Íd, pág. 908.

[70] Íd.

En ciertas instancias "ambas acciones pueden ser concurrentes si el hecho causante del daño es al mismo tiempo incumplimiento contractual y violación al deber general de no causar daño a otro".[71] Cuando esto ocurre, el demandante deberá elegir entre una u otra, dependiendo de cuál es la que mejor le ayuda a vindicar sus derechos.[72] Esto se debe a que "las causas de acción, alternativas o independientes, son acumulables. Sin embargo, no se autoriza la duplicidad de remedios. Por lo tanto, el perjudicado debe seleccionar entre las acciones disponibles. Esta selección se deduce de las alegaciones y de la prueba que este presente."[73]

## III

Partiremos de la premisa que, en el presente caso, nos encontramos ante una moción de desestimación. Por tanto, debemos de dar por ciertas todas las alegaciones bien hechas en la demada. [74] La UIA era propietaria de un porfolio de

---

[71] *Consejo de Titulares v. Mapfre*, supra, pág. 781.

[72] *Ramos Lozada v. Orientalist Rattan Furniture, Inc.,* 130 DPR 712, 726-728 (1992).

[73] *Consejo de Titulares v. Mapfre*, supra, págs. 783-784.

[74] Al evaluar una moción de desestimación debemos: "(1) tomar como ciertos los hechos bien alegados en la demanda; (2) analizar el ataque al vicio intrínseco en la primera alegación, y (3) tener el convencimiento judicial de que 'el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor.'" *Comisión v. González Freyre et al.*, 211 DPR 579, 614-615 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022), citando a *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015). Conforme con lo señalado, hemos resuelto "que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos". *Comisión v. González Freyre et al.*, supra, pág. 615. De modo que, "una vez el juzgador analice ponderadamente que, de manera principal o en la

inversiones o valores que manejaba SLLLC en capacidad fiduciaria. Estos valores servían de colateral, en calidad de prenda, para seis préstamos comerciales que la UIA tenía con BSPR. Sin más, BSPR declaró vencidos los préstamos y ordenó la ejecución de la garantía, por lo que, sin que la UIA lo autorizara, SSLLC procedió con la venta de sus acciones el 4 de noviembre de 2005.

Por otro lado, alegó que BSPR y SSLLC actuaron de mala fe, de forma fraudulenta y en contra de sus deberes de fiducia a la hora de vender su cartera de valores e incumplieron con lo contratado. Asimismo, adujo que las acciones de los demandados le ocasionaron daños económicos y financieros difíciles de estimar. No obstante, a petición de la UIA, el tribunal de instancia desestimó con perjuicio las causas de acción contra SSLLC.[75] De este modo, quedaron pendientes las entabladas contra BSPR, a saber: el incumplimiento de contrato fundamentado en el Art. 1054 del Código Civil de 1930; los daños y perjuicios, por actuar fraudulentamente y de mala fe al amparo de los Arts. 1802 y 1210 del Código Civil de 1930, y el cobro de dinero en virtud del Art. 410(a)(2) de la Ley de Valores, *supra*.

_____

alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda". Íd.

[75] Entiéndase, el incumplimiento de contrato fundamentado en el Art. 1054 del Código Civil de 1930; los daños y perjuicios, por la violación al deber de fiducia al amparo del Reglamento Núm. 6078, actuar de forma fraudulenta y de mala fe al amparo de los Arts. 1802 y 1210 del Código Civil de 1930, y el cobro de dinero en virtud del Art. 410 (a) (2) de la Ley de Valores, supra.

Ahora bien, BSPR alegó que la controversia está centrada en una transacción de valores, por lo que la ley especial -Ley de Valores, *supra*- desplaza a la ley general -Código Civil de 1930. Para poder resolver el planteamiento de BSPR, primero debemos de analizar si la UIA podía acumular una causa de acción centrada en una transacción de valores con cualquier otra causa de acción a la que entienda tenga derecho. Contestamos en la afirmativa.

La Regla 6.5(2) de Procedimiento Civil, 32 LPRA Ap. V, R. 6.5 (2), permite que una parte formule cuantas reclamaciones o defensas tenga, aunque sean incompatibles.[76] Por otro lado, el Art. 410(h) de la Ley de Valores, *supra,* expresa que "los derechos y remedios provistos por el capítulo **son en adición a cualesquiera derechos o remedios que puedan existir.**"[77] Por ello, indistintamente de si surgen de una ley especial o de la ley general, la UIA podía presentar todas las reclamaciones que tuviera en contra de BSPR y SSLLC.

Además, esto es cónsono con la interpretación que se ha hecho en la esfera federal. Según discutido, el Tribunal

---

[76] La Regla 6.5 (b) de Procedimiento Civil, *supra*, dispone que "[…]una parte podrá formular, en la alternativa, cuantas reclamaciones o defensas tenga[,] aunque sean incompatibles". Es decir, esta regla le permite "a un demandante hacer reclamaciones de su derecho en la alternativa, y hasta hipotéticamente; y permite hacer reclamaciones inconsistentes (incompatibles) entre sí". *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305, 309 (1970). Por supuesto, como expusimos "las causas de acción, alternativas o independientes, son acumulables" en una misma demanda. [76] *Consejo de Titulares v. Mapfre*, supra, págs. 783-784.

[77] 10 LPRA sec. 890(h).

Supremo de Estados Unidos interpretó que tanto la Ley Reguladora de Bolsas de 1933 como la Ley Reguladora de Bolsas de 1934 disponen que sus remedios son adicionales a cualquier otro que tengan las partes, lo que implica que el promovente de una acción al amparo de estos estatutos puede presentar cualquier otra causa de acción que pueda existir al amparo de la ley estatal.[78]

Ahora bien, BSPR afirma que la alegación por incumplimiento contractual no cambia la naturaleza de la reclamación. Esto es, que todas las alegaciones de la UIA se circunscriben a la venta de su cartera de valores, por ello, le aplica la Ley de Valores, *supra*, y su término de caducidad de dos años. Por lo tanto, según aduce, el resultado debe ser la desestimación porque caducó la causa de acción en su contra. Tampoco nos convence este planteamiento.

Reiteramos nuestros pronunciamientos de *Olivella v. Triple S*, supra, pág. 642, en que no toda controversia que involucre un valor estará sujeta a la Ley de Valores, *supra*, ni a su término de caducidad.[79]

El primer paso que debemos tomar para saber si aplica la legislación de valores es incuestionable, pues en los hechos que tomamos como ciertos se aduce de forma diáfana que BSPR y SSLLC vendieron los valores de la UIA de forma fraudulenta.

_____

[78] *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, supra, pág. 87.

[79] *Olivella v. Triple S*, supra, pág. 642.

Ahora bien, recordemos que la Ley de Valores, *supra*, se creó **para proteger inversionistas**, de modo que, lo segundo que evaluaremos es si las partes involucradas en esta controversia son entidades cuyo propósito principal es el negocio de la venta de valores. Para poder concluirlo, recurriremos a la definición del concepto inversionista que dispone la Ley de Valores, *supra*.

De acuerdo con la ley hay dos tipos de inversionistas: los acreditados y los cualificados. Según discutimos el inversionista acreditado puede ser una casa de inversiones, los bancos y cualquier entidad, cuyo propósito principal no sea el negocio de la venta de valores, pero que es dueña de inversiones que ascienden a más de $5,000,000.00.

En este caso, la UIA alegó en la demanda que es una entidad sin fines de lucro, que no se dedica al negocio de la venta de valores, pero que contaba con una cartera de inversiones que ascendía a $10,306,880.62. Por lo tanto, entendemos que todas las partes involucradas en este caso pueden catalogarse como inversionistas al amparo de la Ley de Valores, *supra*.

A su vez, la UIA, entre otras cosas, le imputó a BSSPR y SSLLC que actuaron de forma fraudulenta a la hora de vender su cartera de valores. Por lo tanto, esbozó una reclamación al amparo del Art. 410(a)(2) de la Ley de Valores, *supra*.

Ahora bien, según mencionamos, **un comprador de valores** es quien tiene el *standing* para presentar la causa de acción del Art. 410(a)(2) de la Ley de Valores, *supra*.[80]

En este caso, a pesar de las alegaciones de la UIA contra BSPR y SSLLC respecto a la venta de los valores, la UIA no era el comprador de dichos valores. Por eso, la UIA en esta ocasión no reclamaba como comprador de dichos valores sino como víctima de una transacción fraudulenta de estas, que a su vez resulta en un incumplimiento contractual. En otras palabras, la UIA no posee un remedio al amparo de dicho cuerpo legal contra BSPR. Conforme a lo anterior no se puede más que concluir que a la presente causa de acción no le aplica la Ley de Valores, *supra*, ni su término de caducidad de dos años.

Sin embargo, nuestro análisis no culmina aquí. Como establecimos al principio, la UIA podía acumular más de una reclamación en su demanda, así fueran incompatibles. De la demanda surge que la UIA formuló una causa de acción por incumplimiento contractual y otra por daños y perjuicios por acciones fraudulentas y de mala fe. De modo que estamos ante una concurrencia de causas, una con un término prescriptivo de quince años y otra con un término de prescripción de un año.

_____

[80] En específico, establece que si una persona vende un valor por medio de una declaración falsa o engaño es **el comprador quien puede entablar una demanda en contra del vendedor** para recobrar el precio pagado por el valor, en caso de que aún se encuentre en posesión de este. De no encontrarse en posesión del valor, el comprador del valor tiene el remedio de demandar al vendedor por daños y perjuicios.

Como adelantamos, si bien la UIA puede acumular ambas acciones, esta deberá escoger una, dado que ambas modalidades responden a un principio común de derecho y a una misma finalidad reparadora.[81] Por lo tanto, el tribunal solo podrá adjudicar la controversia conforme a la causa de acción que la UIA haya seleccionado.[82] Esta selección deberá reflejarse, conjuntamente, de las alegaciones y la prueba presentada por la UIA.[83] De acuerdo con las alegaciones de la demanda, la UIA escogió la causa de acción por incumplimiento contractual, pues adujo que BSPR incurrió en incumplimiento contractual cuando declaró vencidos, líquidos y exigibles los préstamos sin que se encontrara en incumplimiento. A su vez, y en la alternativa, sostuvo que, de haber estado en incumplimiento, BSPR incumplió con brindarle una oportunidad para subsanar el presunto incumplimiento. Al considerar el *Promissory Note, Pledge and Control Agreement*, si la UIA incurría en algunos de los *Events of Default*,[84] entre los cuales se encontraba el no pagar sus deudas, admitir por escrito que estaba insolvente o si se hubiese acogido a cualquier procedimiento de quiebra, BSPR se comprometió a hacer cualquier compromiso o acuerdo razonable con respecto a la garantía mobiliaria, tales como: extender el término del

---

[81] *Consejo de Titulares v. Mapfre*, supra, pág. 781.

[82] Íd., pág. 785.

[83] Íd.

[84] La totalidad de los *Events of Default* están consignados en el *Promissory Note, Pledge and Control Agreement*, *Certiorari*, Apéndice, pág. 77.

pago, concertar pagos a plazos y modificar los términos del colateral.[85] De manera que, al dar por ciertas las alegaciones que hizo la UIA sobre este particular, esta podría tener una causa de acción por incumplimiento contractual contra BSPR cuyo término de prescripción es de quince años.

Por lo tanto, concluimos que el Tribunal de Apelaciones actuó correctamente al revocar al Tribunal de Instancia. Esto porque conforme al análisis esbozado la UIA pudiera tener una causa de acción por incumplimiento contractual que no está prescrita, por lo que no procedía la desestimación de la demanda.

IV

Por los fundamentos expuestos, se confirma la determinación del Tribunal de Apelaciones y se ordena al Tribunal de Primera Instancia que atienda el litigio conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[85] Íd., pág. 76.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

| | | |
|---|---|---|
| Unión Independiente Auténtica (U.I.A) en representación de todos los empleados de la AAA<br><br>Recurrido<br><br>v.<br><br>Santander Securities LLC; First Bank Puerto Rico y otros<br><br>Peticionario | CC-2022-0467 | |

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de julio de 2024.

Por los fundamentos expuestos en la Opinión que antecede, se confirma la determinación del Tribunal de Apelaciones y se ordena al Tribunal de Primera Instancia que atienda el litigio conforme a lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez concurren sin opinión escrita. El Juez Asociado señor Estrella Martínez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo