EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Elliot Merced Montañez | 2005 TSPR 80<br><br>164 DPR ____ |

Número del Caso: CP-1998-2

Fecha: 22 de abril de 2005

Abogado del Peticionario:

Por Derecho Propio

Oficina del Procurador General:

Lcda. Ivonne Casanova Pelosi
Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

IN RE:

                                        CP-1998-2

Elliot Merced Montañez

PER CURIAM

San Juan, Puerto Rico, a 22 de abril 2005.

El licenciado Elliot Merced Montañez, abogado e ingeniero de profesión, instó una demanda en cobro de dinero contra unos ex clientes, quienes alega le debían cierta cantidad de dinero en concepto de honorarios de abogados. Éstos a su vez, reconvinieron alegando que el licenciado Merced Montañez les había facturado, y ellos habían pagado, en exceso a lo pactado. La conducta del licenciado Merced como demandante en ese caso y su renuencia a satisfacer la sentencia dictada en su contra por el Tribunal de Primera Instancia se encuentra hoy ante nuestra consideración.

I

En julio de 1997, la Oficina del Procurador General presentó una queja contra el licenciado Merced ante este Tribunal. La queja presentada se relacionaba con una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón de fecha de 4 de marzo de 1994, en el caso Elliot Merced Montañez v. Suc. Rafael Rivera Alejandro, Civil Núm. DAC-91-6662, sobre incumplimiento de contrato y cobro de dinero. En dicha sentencia, el Hon. Carlos Rivera Marrero resolvió que el querellado debía reembolsar a los demandados, aquí quejosos, la cantidad de $20,341.42 que éstos le pagaron en exceso.[1]

En marzo de 1988, la sucesión de don Rafael Rivera Alejandro suscribió una carta acuerdo sobre servicios profesionales con el querellado para que éste realizara los trámites legales correspondientes para liquidar la herencia del causante. Las partes pactaron que los honorarios del querellado habrían de computarse a razón del cinco por ciento (5%) sobre los primeros $100,000.00 del monto del caudal, y en tres por ciento (3%) sobre el balance. Con posterioridad, se suscribieron otras dos cartas acuerdos con la sucesión de dos familiares del causante Rafael Rivera Alejandro, que fallecieran antes de concluir las gestiones de liquidación de la sucesión de don Rafael.

---

[1] El tribunal dispuso también el pago de $2,500.00 por concepto de honorarios de abogado.

En enero de 1990, el licenciado Merced envió una factura a sus clientes por los trabajos rendidos hasta ese momento. En la misma, estimó el valor total del caudal a liquidar en $783,592.74. Sobre esa base aplicó un quince por ciento (15%) sobre los primeros $100,000.00 y un nueve por ciento (9%) sobre el balance, para un total en honorarios de abogados de $76,523.35. A renglón seguido indicó, que ajustaba la factura y computó el ocho por ciento (8%) sobre la cantidad de $733,652.74 y, un tres por ciento (3%) sobre una estructura propiedad de la sucesión valorada en $49,940.00, para un total de $60,190.42 en honorarios de abogados. Los miembros de la sucesión pagaron la factura remitida en febrero de ese mismo año.

Año y medio más tarde, en mayo de 1991, la sucesión le solicitó la renuncia al licenciado Merced Montañez. En junio de 1991, el querellado le remitió a la sucesión una factura de $10,561.26 de unos honorarios que indicó quedaban por satisfacer. La sucesión objetó los honorarios facturados. Así las cosas, el licenciado Merced instó el pleito antes mencionado. Los miembros de la sucesión, a su vez, reconvinieron alegando que la factura de enero de 1990 de sobre $60,000.00, no se ajustaba a los términos acordados. El tribunal de instancia, como hemos señalado, declaró con lugar la reconvención y ordenó la devolución de $21,618.51, pagado en exceso. En la sentencia dictada, el Juez Rivera Marrero hizo constar que tomó en consideración

lo dispuesto en los Cánones 23, 24 y 25 de Ética Profesional, 4 L.P.R.A. Ap. IX.

Inconforme con la determinación del tribunal de instancia, el querellado interpuso recurso de revisión ante este Tribunal (RE-1995-26). El 17 de marzo de 1995, dictamos una Resolución en dicho caso proveyendo no ha lugar al recurso instado e indicamos:

> "A la solicitud de revisión radicada por la parte demandante recurrente, no ha lugar. La sentencia recurrida es fundamentalmente correcta. La parte recurrente no aduce hecho o fundamento alguno que nos induzca a intervenir con la misma."

En su escrito, el Procurador General nos informó que los quejosos habían tratado, infructuosamente, de hacer efectiva su sentencia desde julio de 1995, cuando ésta advino final y firme.

Presentada la queja, se le concedió al licenciado Merced término para que replicase a la misma. En su contestación, el licenciado Merced Montañez expresó su convencimiento de que la sentencia dictada en su contra fue una totalmente injusta y errónea. La argumentación del querellado giró, fundamentalmente, alrededor de los méritos de la sentencia dictada en su contra en el caso DAC-91-6662, que como vimos dio origen a la queja formulada. Éste entiende que dicha sentencia no reflejó adecuadamente el acuerdo sobre honorarios de abogados pactados por las partes habida cuenta que, según alega, hubo una novación de los términos del contrato originalmente suscrito. En su escrito, específicamente,

nos solicitó que examináramos el testimonio de la parte demandada en ese pleito para que luego resolvamos "mediante opinión la corrección o no de la sentencia que ha provocado un reclamo tan importante para el futuro profesional, económico y personal del suscribiente."

En su defensa, expresó que en sus veinte y dos años de abogado siempre ha actuado rectamente y en estricto apego a los cánones de ética que rigen la profesión de abogado así como la de ingeniería.

Evaluado el Informe del Procurador General y la respuesta del querellado, ordenamos al primero que presentara querella. En enero de 1998 se presentó la correspondiente querella. En la misma se formularon tres cargos por violación a los Cánones 23, 24 y 25 de Ética Profesional, *ante*. Los mismos se basan en las determinaciones de hechos formuladas por el Tribunal de Primera Instancia en el caso DAC-91-6662, las cuales se adoptaron como propias y en la negativa del licenciado Merced a cumplir con los términos de la sentencia dictada en su contra.

El Procurador General nos señaló que la actitud del licenciado Merced Montañez de negarse a pagar la sentencia dictada en su contra configuraba, primero, una violación al Canon 23 de Ética Profesional que exige, entre otras cosas, que todo abogado debe cultivar una relación fiduciaria con su cliente fundamentada en la más absoluta honradez. Segundo, una violación al Canon 24 que obliga a todo

abogado a fijar sus honorarios razonablemente para que reflejen lo que realmente valen sus servicios. Y finalmente, que la conducta del licenciado Merced infligía el Canon 25 de Ética Profesional que obliga al abogado a evitar controversias con sus clientes relacionadas a su compensación y a recurrir a demandas contra dicho cliente solo en casos en que se deba evitar una injusticia, imposición o fraude.

El 27 de marzo de 1998 nombramos al licenciado Pierre Vivoni para que, en calidad de Comisionado Especial, escuchara la prueba y rindiera el informe de rigor.

Luego de varios incidentes procesales que no es necesario relatar, en mayo de 1999, el querellado presentó por escrito su posición respecto a la querella presentada. En el escrito presentado planteó, esencialmente, los mismos argumentos esgrimidos cuando contestó el informe presentado por el Procurador General.

Así las cosas, el asunto quedó sometido ante el Comisionado. Luego de la renuncia del Comisionado Vivoni por haber asumido éste el cargo de Superintendente de la Policía de Puerto Rico designamos a la licenciada Ygrí Rivera de Martínez como Comisionada Especial.

La Comisionada Rivera de Martínez nos sometió su informe. En el mismo concluyó que, conforme la prueba desfilada, los argumentos de las partes y las determinaciones de hechos del Tribunal de Primera

Instancia, se configuraron las violaciones a los Cánones de Ética Profesional imputados por el Procurador General.

Finalmente, en su Informe ante nosotros la Comisionada Rivera de Martínez nos recomienda que se tome en consideración como atenuante a la actuación del querellado, el hecho "que es la primera vez que el querellado se ha visto sometido a un procedimiento de esta magnitud, a pesar que fue autorizado a ejercer la abogacía desde el año 1975 y la notaria el 1976, y además practica su profesión como Ingeniero Civil."[2]

Resumido los hechos que dan base a la querella presentada y las conclusiones de la Comisionada Especial, pasemos entonces a evaluar el derecho aplicable para luego determinar si la conducta del licenciado Merced Montañez configura violación a los Cánones de Ética Profesional según fueron imputados. Veamos.

II

El contrato de servicios profesionales de abogado está revestido de un alto contenido ético, que lo distingue de un contrato ordinario de arrendamiento de servicios. *Nassar Rizek v. Hernández*, 123 D.P.R. 360 (1989); *Colón v. All Amer. Life & Cas. Co.*, 110 D.P.R.772 (1981). De ahí, que el Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX, indique que la fijación de honorarios profesionales deberá

---

[2] Señala la Comisionada que el 8 de octubre de 1998 se presentó una queja ante este Tribunal contra el licenciado Merced Montañez pero la misma fue archivada el 12 de marzo de 1999.

regirse siempre por el principio deontológico que la profesión legal es parte "de la administración de la justicia y no un mero negocio con fines de lucro."

En nuestra jurisdicción, hemos dispuesto que los honorarios contingentes no están reñidos con la ética cuando redunden en beneficio para el cliente, o cuando el cliente lo prefiera una vez informado de sus particularidades y sus consecuencias o, cuando el mismo no sea excesivamente oneroso que logre alcanzar dimensiones de mala fe. *In re, Criado Vázquez*, res. 29 de octubre de 2001, 155 D.P.R. ___, 2001 JTS 155; *Méndez v. Morales,* 142 D.P.R. 26 (1996); *In re, Clavell Ruíz*, 131 D.P.R. 500 (1992). Mediante este tipo de acuerdo, el abogado se hace partícipe en el resultado del caso que tramita para recibir así un por ciento de la cuantía que reciba su cliente. *In re, Criado Vázquez*, *ante.*

Hemos resuelto reiteradamente que es deseable que el acuerdo sobre honorarios de abogado se reduzca a escrito, con la mayor claridad posible, libre de ambigüedades y haciendo constar las contingencias previsibles que pudieran surgir durante el transcurso del pleito o del asunto que se atiende a nombre del cliente. *Pérez v. Col. Cirujanos Dentista de P.R.*, 132 D.P.R. 545 (1992); *Ramírez Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161 (1989); Colón v. All Amer. Life & Cas. Co., *ante*. Así, en *Ramírez Segal & Látimer,* específicamente indicamos que, "tanto los cánones de ética profesional como la jurisprudencia indican que la

mejor práctica la constituye el acordar, por escrito y con claridad, los honorarios y designar una cantidad fija o una fórmula para computarla o determinarla." 123 D.P.R. pág. 173. Véase, Cánones 24 y 25 de Ética Profesional, 4 L.P.R.A. Ap. IX; *Colón v. All Amer. Ins. & Cas. Co., ante*. Una vez reducido a escrito, se minimizan, necesariamente, las controversias con los clientes sobre el monto de la compensación por servicios prestados. *Méndez v. Morales, ante.*

De otro lado, el abogado tiene derecho a recibir una compensación razonable por los servicios que rinde a sus clientes. *Pérez v. Col. Cirujanos Dentistas, ante; Rodríguez v. Ward*, 74 D.P.R. 880 (1953). En *Nassar v. Rizek*, dijimos entonces que, "[l]o expuesto tiene como contraparte el del abogado a recibir como profesional una compensación razonable por sus servicios . . . Como corolario, el abogado está facultado a entablar aquellas reclamaciones judiciales necesarias para el cobro de sus honorarios, aunque cautelarmente, el mismo canon señala que 'debe evitarse', a no ser que se presenten únicamente para impedir injusticias, imposiciones o fraudes." Canon 25, *ante*; *Pérez v. Col. Cirujanos Dentistas, ante.*

Veamos entonces como esta normativa aplica a los hechos del caso ante nuestra atención.

### III

De entrada, hacemos constar que hemos evaluado detenidamente el informe que nos fuera sometido por la

Comisionada Especial en este caso, el informe y la querella presentada por el Procurador General, las determinaciones de hecho formuladas por el Tribunal de Primera Instancia en el caso DAC-91-6662, así como el expediente original de dicho caso.

Luego de esta evaluación queda claro que el querellado en este caso suscribió tres cartas acuerdos para tramitar todo lo relacionado con la liquidación de tres sucesiones distintas, aunque relacionadas entre sí. Las cartas acuerdos eran idénticas todas en cuanto a sus términos y condiciones. En cada uno de estos contratos se disponía que el licenciado Merced Montañez realizaría todos los trámites relativos al caudal del causante y sus honorarios se computarían, como indicáramos, a razón del cinco por ciento (5%) sobre los primeros $100,000.00 del monto del caudal y tres por ciento (3%) sobre el exceso de los $100,000.00. Los términos de las cartas acuerdos suscritas entre las partes, por lo tanto, eran claros e inequívocos.

Éste arguye que dichos términos fueron variados por las partes y nos indica que ello explica el por qué se le pagó la factura de enero de 1991, sin objeción alguna. Sobre este particular el tribunal de instancia señaló que la interpretación del licenciado Merced contradice la prueba presentada e incluso su propio testimonio, cuando acepta que las cartas acuerdos "siempre estuvieron en vigor y gobernaban las relaciones entre las partes." Sentencia enmendada, pag. 7. Por lo tanto, la posición del

querellado que los términos de las cartas acuerdos suscritos entre él y sus representados se variaron no encuentra apoyo en la prueba que desfiló en el caso y su testimonio sobre este particular no le mereció credibilidad al tribunal de instancia.

Como ya indicamos, esta determinación advino final y firme.

Este caso ejemplifica la necesidad imperiosa de que todo abogado recoja en un documento el acuerdo a que llega con sus clientes sobre sus honorarios, **así como cualquier enmienda o variación a lo acordado originalmente que surja durante el trámite del caso o del asunto que se atiende para un cliente**. De esta forma se reducen al mínimo los posibles conflictos que puedan surgir en la relación abogado cliente, particularmente, cuando surgen desavenencias entre representante y representado. Ello reducirá las agrias disputas que este tipo de litigación siempre genera y que tanto lacera la imagen de la profesión legal y de la justicia en general.

Por otro lado, la determinación hecha por el Tribunal de Primera Instancia sobre el monto de los honorarios a que tenía derecho el licenciado Merced fue justa y razonable. La cantidad determinada por dicho foro constituía una compensación razonable  por los servicios prestados por éste a sus clientes. *Nassar v. Rizek, ante; Pérez v. Col. Cirujanos Dentistas, ante.*

Debemos además señalar que la insistencia del licenciado Merced Montañez de no acatar los términos de la sentencia dictada por el Tribunal de Primera Instancia en el caso DAC-91-6662 luego de ésta advenir final y firme, merece nuestra mas enérgica censura. El licenciado Merced no era un demandante cualquiera, desconocedor de los procesos judiciales. Todo lo contrario, es un abogado avezado, con más de veinte años de experiencia como abogado postulante, lo que hace su actuación aun más reprochable.

No se justifica en nada la contumacia y testarudez del licenciado Merced de negarse a aceptar los términos de una sentencia final y firme. Adviértase que el licenciado Merced agotó todos los mecanismos legales que tenía a su disposición para revisar el dictamen de instancia. Su conducta lesiona los mejores intereses de la administración de la justicia.

No podemos dejar al arbitrio de los litigantes la determinación de qué dictámenes acatar y cuáles no. Ello propende al caos y a la anarquía, anatemas a un ordenamiento donde se respeten los tribunales de justicia y sus dictámenes. Todo abogado tiene la obligación ética de siempre actuar con el mayor respeto hacia los tribunales y las partes.

A la luz de lo anterior concluimos que el licenciado Merced Montañez incurrió en violación a los Cánones 23, 24 y 25 de Ética Profesional según fueron presentados por el Procurador General. Habida cuenta sin embargo, que ésta es

la primera vez en que atendemos una queja contra el licenciado Merced Montañez en sus 29 años como abogado, nos limitamos en esta ocasión a censurarle enérgicamente por su conducta impropia y altamente reprochable. Le advertimos que, en lo sucesivo, deberá ser más cuidadoso y riguroso en los acuerdos sobre honorarios de abogados a los que llega con sus clientes, teniendo presente que lo más aconsejable es que cualquier cambio sustancial en los términos acordados originalmente deberán recogerse también en documento escrito.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

IN RE:

Elliot Merced Montañez                    CP-1998-2

SENTENCIA

San Juan Puerto Rico, a 22 de abril de 2005

Por los fundamentos expuestos en la Opinión de Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, concluimos que el licenciado Elliot Merced Montañez incurrió en violación de los Cánones 23, 24 y 25 de Etica Profesional, según fueron presentados por el Procurador General.

Habida cuenta, sin embargo, que esta es la primera vez que atendemos una queja en contra del licenciado Merced Montañez, nos limitamos en esta ocasión a censurarle enérgicamente por su conducta impropia y altamente reprochable. Le advertimos que en lo sucesivo, deberá ser más cuidadoso y riguroso en los acuerdos sobre honorarios de abogados a los que llega con sus clientes, teniendo presente que lo más aconsejable es que cualquier cambio sustancial en los términos acordados originalmente deberán recogerse también en documento escrito.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribual Supremo