Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **ELADIO LOPEZ REYES, ET ALS**<br><br>Apelantes<br><br>v.<br><br>**RODRIGUEZ ORTIZ, RODRIGUEZ-RUIZ & ASOCIADOS, ET ALS**<br><br>Apelados | KLAN202300254 | **APELACION** procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Caso Núm.:<br>**K AC2010-0225**<br><br>Sobre:<br>**Incumplimiento de Contrato** |

Panel integrado por su presidenta la Juez Barresi Ramos[2], la Juez Martínez Cordero y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 14 de noviembre de 2024.

Comparecen ante nos, Eladio López Reyes, Francisca Quiñones García y la Sociedad de Bienes Gananciales entre ambos, en adelante, SBG López-Quiñones, y All Systems Electronics, Inc., en adelante, All Systems. Ambas partes son apelantes en el recurso de *"Apelación"* que nos ocupa, en el que solicitan la revisión de la *"Sentencia"* notificada el 10 de enero de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante, TPI-SJ. En la misma, el Foro Primario desestimó la demanda de epígrafe.

Por los fundamentos que expondremos a continuación, *confirmamos* la *"Sentencia"* apelada.

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución del Juez Nery E. Adames Soto.

[2] Véase Orden Administrativa OATA-2024-020 del 31 de enero de 2024, donde se designa a la Jueza Eileen J. Barresi Ramos en sustitución de la Jueza Gloria L. Lebrón Nieves.

Número Identificador
SEN2024_____

**I.**

El 11 de febrero de 2010, los apelantes radicaron una *"Demanda"* en contra de Rodríguez-Ortiz, Rodríguez-Ruiz & Asociados, CPS, et als., en adelante, Asociados CPS o apelados, y Universal Insurance Company, en adelante, Universal.[3] La precitada demanda fue radicada en cobro de dinero y daños y perjuicios. El 26 de septiembre de 2003, All Systems suscribió un contrato con los Asociados CPS para que estos lo representasen legalmente en una acción de daños y perjuicios y cobro de dinero contra RC&A Telecommunications.[4] Los honorarios de abogado de lo obtenido por el cliente en este pleito, fueron pactados en un veinte por ciento (20%).[5]

Además, pactaron que en otros casos de cobro de dinero, los honorarios de abogado serían en un veinticinco por ciento (25%) de la cantidad obtenida por All Systems.[6] En otros casos de daños y perjuicios, los honorarios de abogado se pactaron en un treinta y tres por ciento (33%) de lo obtenido por el apelante.[7] Finalmente, dispuso el contrato que en los casos en el que All Systems figure como el demandado, los honorarios de abogado se facturarán mensualmente en una tarifa de $125.00 por hora.[8]

El 24 de mayo de 2007, la codemandada, Puerto Rico Telephone Company, en el caso contra RC&A Telecommunications (K AC2002-3588), suscribió un acuerdo transaccional con All Systems por la suma de $1,200,000.00. Sin embargo, el Tribunal retuvo $84,000.00, ya que el Estado Libre Asociado de Puerto Rico le reclamaba a All Systems ciertas obligaciones contributivas.

El 1 de mayo de 2007, el Banco Popular de Puerto Rico solicitó intervenir en el precitado caso, requiriendo que el Tribunal

---

[3] Apéndice del recurso, pág. 1.
[4] *Íd.* pág. 9.
[5] *Íd.*
[6] *Íd.* pág. 10.
[7] *Íd.*
[8] *Íd.*

congelara los fondos hasta tanto se adjudicara una causa de acción instada por el mencionado Banco contra All Systems, en el TPI-Bayamón.

Ahora bien, en su demanda, los apelantes alegaron que los apelados conspiraron para defraudarlos, mediante un nuevo contrato de servicios profesionales, en el que alegadamente se pactaron honorarios de abogado excesivos.[9]

El 24 de julio de 2017, Asociados CPS presentó una *"Solicitud de Embargo y Ejecución de Sentencia"*.[10] Parte de lo solicitado por los apelados, en representación de All Systems, fue que se expidiera un cheque a su favor por la cantidad de $600,000.00. Para justificar este pago, Asociados CPS presentó una declaración jurada, firmada por Eladio López Reyes, fechado con el mes de julio del año 2007, en la que cedió y traspasó la precitada cuantía a Asociados CPS, por haber sido responsabilidad de estos los gastos del litigio.[11] El Foro Primario expidió un cheque por esa cantidad a favor de estos, el 17 de febrero de 2009.[12] Según los apelantes, Asociados CPS se enriqueció injustamente, por lo que, mediante la demanda incoada, solicitaron al TPI-SJ que condenara a los apelados al pago y devolución de $360,000.00.[13]

Ahora bien, el 22 de junio de 2010, los apelados presentaron su *"Contestación a Demanda"*.[14] En esencia, alegaron que el aumento en honorarios se debió a una cantidad adeudada por los apelantes, a razón de otras labores profesionales, rendidas a su favor. Luego de dos enmiendas a la demanda, y sus respectivas contestaciones,[15] el 29 de julio de 2013, el TPI-SJ desestimó la demanda de la SBG López-Quiñones con perjuicio.[16] El Foro

---

[9] Apéndice del recurso, pág. 11.
[10] *Íd.* pág. 39.
[11] *Íd.* pág. 321.
[12] *Íd.* pág. 45.
[13] *Íd.* pág. 31.
[14] *Íd.* pág. 21.
[15] *Íd.* págs. 36-73.
[16] *Íd.* pág. 76.

Apelado concluyó que el segundo acuerdo fue suscrito con el propósito de impedir que el Departamento de Hacienda y el Banco Popular de Puerto Rico recobraran lo adeudado por All Systems. Además, entendió que los apelantes hicieron "estado de su propia torpeza e ilicitud al contratar".[17] También, expresó que "nuestro ordenamiento jurídico no le reconoce una causa de acción a las partes que contratan con conocimiento de la causa ilícita o torpe del contrato".[18]

Luego, la SBG López-Quiñones presentó un recurso de apelación ante esta Curia. En su *"Sentencia"* del 31 de octubre de 2013, un panel hermano dejó sin efecto el dictamen recurrido, "hasta que se diluciden y determinen los hechos específicos sobre la alegación de fraude".[19] Esto último, pues entendió la posibilidad de fraude en el segundo contrato.[20] Para resolver el asunto, este Tribunal impartió varias instrucciones al devolver el caso: 1) celebrar una vista evidenciaria para auscultar si hubo fraude en el segundo contrato; 2) evaluar el primer contrato y su eficacia y 3) si hubo desplazamiento sin causa y si ocasionó algún efecto.

Devuelto el caso al Foro Primario, el 9 de septiembre de 2016, se celebró una vista con el fin de presentarle evidencia al TPI-SJ.[21] Luego de presentar prueba, y la presentación de argumentaciones, las partes estipularon *que no hubo fraude en el segundo contrato*. Sin embargo, el Tribunal indicó que subsistía la controversia con relación a la intención de las partes al otorgar el segundo contrato. De esta manera, el Foro Primario dio por atendida las instrucciones del Tribunal de Apelaciones, con relación a la determinación de fraude.[22]

---

[17] Apéndice del recurso, pág. 124.
[18] Artículos 1257 y 1258 del ahora derogado Código Civil de 1930, 31 LPRA ant. secs. 3516 y 3517. *Rubio Sacarello v. Roig*, 84 DPR 344, 350 (1962); *Pueblo v. Rivera*, 27 DPR 1 (1919).
[19] Apéndice del recurso, pág. 96.
[20] *Íd.* pág. 126.
[21] *Íd.* pág. 129.
[22] *Íd.*

Sin embargo, el 25 de abril de 2019 se celebró una vista, cuya *"Minuta-Resolución Enmendada"* fue notificada el 16 de mayo de 2019.[23] De la misma surge que el Foro Primario determinó que procedía recibir prueba para establecer si hubo fraude en la otorgación del segundo contrato, y que es la parte demandante, aquí apelante, a la que le corresponde demostrarlo.

Posteriormente, el juicio en su fondo fue celebrado los días 15, 16 y 17 de marzo; 5 y 6 de abril y 4 de mayo del año 2022.[24] El 13 de julio de 2022 se dio por sometido el caso.[25] El 10 de enero de 2023, el TPI-SJ notificó su *"Sentencia"*.[26]

En su dictamen, el TPI-SJ expuso cincuenta y cinco (55) determinaciones de hechos que entendió probados mediante la prueba desfilada en el juicio.[27] Distinguimos que, el TPI-SJ concluyó *que hubo ausencia total de la prueba, con relación a la intención fraudulenta en el segundo contrato*. Por ello, determinó que el mismo fue válido y sustituyó el primero. De esta manera, desestimó la demanda en su totalidad, e impuso al apelante el pago de los gastos y costas del pleito, así como los honorarios de abogado, por la temeridad en su proceder.

Inconforme, el 27 de marzo de 2023, los apelantes presentaron ante nos un recurso de *"Apelación"*, en la que plantearon los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER MEDIANTE LA MINUTA RESOLUCIÓN DEL 25 DE ABRIL DE 2019 QUE LA PARTE DEMANDANTE TENÍA QUE PROBAR LA EXISTENCIA DE FRAUDE EN LA OTORGACIÓN DEL SEGUNDO CONTRATO DE SERVICIOS, CUANDO LA NULIDAD DEL SEGUNDO CONTRATO YA FUE DECRETADA POR ESTE TRIBUNAL Y POR LO TANTO

---

[23] Apéndice del recurso, pág. 105.
[24] *Íd.* págs. 110-119.
[25] *Íd.* pág. 130.
[26] *Íd.* pág. 121.
[27] *Íd.* págs. 132-139.

ES UN ASUNTO RESUELTO A LA LUZ DE LA LEY DE LA DOCTRINA DEL MANDATO JUDICIAL.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA POR CUANTO LA PRUEBA DOCUMENTAL ADMITIDA SOSTIENE LA NULIDAD DEL SEGUNDO CONTRATO DE SERVICIOS, QUE LOS DEMANDADOS TENÍAN Y SE COMPORTARON CON UNA RELACIÓN CONTRACTUAL DIFERENTE A LO PACTADO EN EL PRIMER CONTRATO O EN EL SEGUNDO CONTRATO Y AUN SI ESTE ÚLTIMO FUERA VÁLIDO COBRARON DE MÁS.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EVALUAR LA SUFICIENCIA DE LA PRUEBA ORAL Y AL HACER UNA APRECIACIÓN ERRÓNEA DEL TESTIMONIO DEL CODEMANDANTE ELADIO LÓPEZ REYES Y DE LOS CODEMANDADOS CARLOS RODRÍGUEZ ORTIZ Y MAGDALIS RODRÍGUEZ RUIZ YA QUE EL TESTIMONIO DE ESTOS EN UNIÓN A LA PRUEBA DOCUMENTAL PRESENTADA ESTABLECE CON PREPONDERANCIA EL DERECHO DEL DEMANDANTE – APELANTE A LA DEVOLUCIÓN DEL DINERO RECLAMADA EN LA DEMANDA.

**CUARTO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA PARTE DEMANDANTE FUE TEMERARIA EN SU CASO.

El 17 de mayo de 2023, recibimos la transcripción de la prueba oral. Posteriormente, el 26 de julio de 2023, recibimos un *"Alegato en Oposición"* de Universal. Finalmente, el 15 de agosto de 2023, los Asociados CPS presentaron su *"Alegato en Oposición a Apelación"*.

Perfeccionado el recurso de autos, procedemos a resolver.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones,

mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán v. SLG Moret-Brunet,* 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de certiorari. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles,* 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell,* 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M. et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez*

*Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

### B. Apreciación de la prueba oral

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, supra. Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan

como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.* pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *W.M.M. P.F.M. et al. v. Colegio et al.,* supra, pág. 903; *Pueblo v. Hernández Doble,* 210 DPR 850, 866 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) *transcripción de la prueba*, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654, 671 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.* Por tanto, "[e]l apelante tiene la obligación de poner en posición al foro apelativo de aquilatar y justipreciar el error anotado". *Morán v. Martí*, 165 DPR 356, 366 (2005).

### C. Autonomía Contractual

En nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda*. Este último principio, estatuido en el Artículo 1044 del Código Civil de 1930, 31 LPRA ant. sec. 2994, establece que los acuerdos tienen fuerza de ley entre las partes que pactan, y deben cumplirse a tenor de estos. *Unión Independiente Auténtica v. Santander Securities LLC*, 2024 TSPR 81, 214 DPR ___ (2024); *Feliciano v. Luxury Hotels Int'l.,* 210 DPR 712, 728 (2022); *Aut. Puertos P.R. v. Total Petroleum et al.,* 210 DPR 16, 59 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 943 (2018); *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014); *PRFS v. Promoexport*, 187 DPR 42, 52 (2012).

Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Artículo 1207 del Código Civil de 1930, supra, ant. sec. 3372;[28] *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018); *Martínez Marrero v. González Droz,* 180 DPR 579, 588 (2011). De manera que, los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil de 1930, supra, ant. sec. 3375.

#### i. Teoría general de los contratos

Es sabido que las partes contratantes quedan obligadas a las condiciones y los términos pactados cuando concurren los elementos de consentimiento, objeto y causa. *Engineering Service v.*

---

[28] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020. Sin embargo, los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia del citado estatuto, por lo que haremos referencia y esbozaremos el derecho a la luz del derogado Código.

*AEE,* 209 DPR 1012, 1027 (2022); *Betancourt González v. Pastrana Santiago*, supra. Artículo 1044 del Código Civil de 1930, supra, ant. sec. 2994. Al respecto, el objeto del contrato ha de ser una cosa determinada, mientras que, la causa corresponde a "la prestación o promesa de una cosa o servicio". *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 189 (2016).

En materia contractual, cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. *Marcial v. Tomé,* 144 DPR 522, 536 (1997). Artículo 1233 del Código Civil de 1930, ant. sec. 3471. De lo contrario, las cláusulas del contrato deben leerse de forma integrada e interpretarse las unas por las otras, resolviendo cualquier ambigüedad de modo que todas sus partes surtan efecto. Artículo 1237 del Código Civil de 1930, supra, ant. sec. 3475. Es decir, los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009).

Asimismo, nuestro ordenamiento jurídico dispone que los contratos conforme a derecho tienen fuerza de ley entre las partes. Véase, *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 725 (2001). Por tanto, los tribunales no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando éste es legal y válido y no contiene vicio alguno. *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999).

### ii. Contratos Profesionales

Como norma general, el contrato de servicios profesionales de abogado se considera una variante del contrato de arrendamiento de servicios de acuerdo con el derogado Artículo 1434 del Código

Civil de 1930, supra, ant. sec. 4013. Es por esto que las reglas generales sobre interpretación de contratos son de aplicación al contrato de servicios profesionales de abogado. *Ramírez, Segal & Látimer v. Rojo Rigual,* 123 DPR 161, 173-174 (1989). Sin embargo, los contratos de servicios profesionales de abogado están revestidos de un alto contenido ético. *Berkan et al. v. Mead Johnson Nutrition,* 204 DPR 183, 215 (2020); *In re Otero, Pacheco,* 200 DPR 561, 575 (2018); *In re Merced Montañez,* 164 DPR 678, 684 (2005); *Nassar Rizek v. Hernández,* 123 DPR 360, 369–370 (1989). De hecho, el mismo es considerado uno de naturaleza *sui géneris.* Íd.

De esta manera, la gestión en la profesión legal queda circunscrita a las normas generales que rigen la fijación de honorarios de abogado, conforme el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24. Esto, ya que "el pago de honorarios de abogados es uno de los elementos que se encuentra rigurosamente sometido a escrutinio y reservas éticas". J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño,* 3a ed. rev., Colombia, Ed. Nomos S.A., 2023, pág. 369.

El precitado canon dispone que los siguientes factores han de ser considerados para fijar honorarios: 1) el tiempo y trabajo requeridos; 2) la novedad y dificultad de las cuestiones envueltas; 3) la habilidad que requiere conducir el caso propiamente; 4) los honorarios que se acostumbran a cobrar en el distrito judicial por servicios similares; 5) la cuantía envuelta; 6) la contingencia o certeza de la compensación; y 7) la naturaleza de la gestión profesional.

Nuestro más Alto Foro aconseja que los acuerdos de honorarios sean reducidos a escrito "con la mayor claridad en sus términos, libre de ambigüedades y haciendo constar las contingencias previsibles que pudieran surgir durante el transcurso

del pleito o del asunto que se atiende a nombre del cliente". *In re Rodríguez Mercado,* 165 DPR 630, 642 (2005).

Por otra parte, "[l]os honorarios contingentes no están reñidos con la ética, siempre y cuando el cliente los prefiera y el abogado le haya explicado con claridad sus consecuencias". *Pérez v. Col. Cirujanos Dentistas de P.R.,* 131 DPR 545, 553-554 (1992). Cuando se pactan honorarios contingentes, el abogado es compensado si gana el caso y en proporción a la cuantía adjudicada por el tribunal. *Pérez v. Col. Cirujanos Dentistas,* supra, pág. 559-560.

Relevante al caso de autos, la Ley Número 9 del 8 de agosto de 1974 enmendó la Sección 11 de la Ley de 11 de marzo de 1909, con el fin de designarle límites a los honorarios contingentes de abogado. El Artículo 1 de la precitada Ley dispone que los abogados solo podrán pactar honorarios contingentes en casos de daños y perjuicios un máximo de 33% del producto final en una sentencia, transacción o convenio. Nada dispone con relación a casos de otra naturaleza.

***Si bien es cierto que nuestro Alto Foro ha distinguido que "un cincuenta por ciento (50%) en honorarios hiere el sentido de lo justo", ha reconocido excepciones a ello***. *In re Clavell Ruiz,* 131 DPR 500, 514 (1992) (Énfasis nuestro). En el caso de *In re Castro Mesa et al.,* 131 DPR 1037, 1046 (1992), el Tribunal Supremo sostuvo el cobro de honorarios contingentes en un caso de daños y perjuicio en exceso del límite de treinta y tres por ciento (33%), tomando en consideración que los abogados querellados también representaron a su cliente en una reconvención y en un procedimiento de ejecución de sentencia.

### iii. Causa Ilícita

A estos efectos, el Artículo 1227 del Código Civil de 1930, supra, ant. sec. 3432, indica que: "[l]os contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita la causa cuando

se opone a las leyes o a la moral". Hay dos tipos de causa ilícita: la causa ilegal, que es contraria a las leyes, y la causa inmoral, llamada también *'causa torpe'*, que es contraria a la moral y a las buenas costumbres. La causa será ilícita no sólo cuando el contrato en sí mismo sea prohibido, sino cuando el mismo sea un intento de ocasionar un daño o perjuicio o *de cometer un fraude. Rosario Rosado v. Pagán Santiago*, supra, págs. 188-189; *Dennis, Metro Invs. v. City Fed. Savs.*, 121 DPR 197, 217 (1988). Por esto, el Tribunal Supremo ha reconocido que aquellos contratos en que la causa sea contraria a la ley, y por tanto ilícita, serán nulos e inexistentes. *Rosario Rosado v. Pagán Santiago,* supra, págs. 187-188; *Morales v. Municipio de Toa Baja*, 119 DPR 682, 684-685 (1987); *Sánchez Rodríguez v. López Jiménez,* 116 DPR 172, 181 (1985).

Lo cierto es que todo contrato sin causa o con causa ilícita es nulo. Por consiguiente, "una vez se determina la ilicitud de la causa, el contrato es nulo e inexistente". *Piovanetti v. S. L. G. Touma, S. L.G. Tirado*, 178 DPR 745, 773 (2010). Es con ese propósito en mente que el Artículo 1255 del Código Civil de 1930, supra, ant. sec. 3514, dispone que la declaración de nulidad tendrá como consecuencia deshacer el intercambio de prestaciones practicadas y evitar que las obligaciones contraídas y no cumplidas puedan ser exigidas.

Por otro lado, aunque es norma conocida que para que un contrato sea válido tiene que cumplir con el requisito de causa, nada impide que se pueda reconocer la validez a un contrato que posea una causa falsa, entendida como una causa fingida o que encubre una verdadera. *Delgado Rodríguez v. Rivera Siverio*, 173 DPR 150, 161 (2008). Así, el Artículo 1228 del Código Civil de 1930, supra, ant. sec. 3433, establece que "[l]a expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita." ***Por lo que se ha reconocido la validez de un contrato simulado que exprese una causa***

*falsa, siempre que se pruebe que el negocio encubre una causa verdadera y lícita*. *Delgado Rodríguez v. Rivera Siverio*, supra, pág. 161; *Reyes v. Jusino,* 116 DPR 275, 284 (1985).

### D. Fraude

El caso *The Texas Co. v. Estrada y Álvarez,* 50 DPR 743, 747-748 (1936), estableció la prueba "sólida, clara, convincente e incontestable" como el estándar de evidencia para el fraude. Sin embargo, en *Carrasquillo v. Lippitt & Simonpietri, Inc.*, 98 DPR 659, 662 (1970), y *García López v. Méndez García*, 102 DPR 383, 386 (1974), nuestro Alto Foro abandonó la misma. *La normativa probatoria para el fraude ahora establece que el mismo no se presumirá, y que aquél que lo afirma debe probarlo* con un grado de certeza razonable, y mediante el estándar de preponderancia de prueba. *González v. Quintana,* 145 DPR 463, 471 (1998).

Esto último queda implícitamente ratificado mediante la Regla 110(b) de Evidencia, 32 LPRA Ap. VI, R. 110, la cual establece que "[l]a obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia".

### E. Temeridad

La Regla 44.1 de Procedimiento Civil, supra, faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado en casos donde cualquiera de las partes o sus abogados hayan procedido con temeridad o frivolidad. A falta de una definición de lo que constituye temeridad, el Tribunal Supremo de Puerto Rico ha dispuesto que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

En nuestro ordenamiento, dicho concepto es amplio, sin

embargo, nuestro más Alto Foro ha señalado, a modo de ejemplo, que constituye temeridad "[n]egar un hecho que le consta es cierto al que hace la alegación". *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). Los honorarios por temeridad se imponen como:

> [p]enalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconveniencias de un pleito.
>
> *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010).

Aunque la penalidad por temeridad de una parte no está explícitamente consignada en las Reglas de Procedimiento Civil, supra, es a través de la imposición de honorarios de abogado, que el Tribunal ejerce esta facultad. Algunas instancias en las cuales el Tribunal Supremo de Puerto Rico ha reconocido que una parte actúa de forma temeraria se constituyen cuando:

> (1) contesta la demanda y niega responsabilidad total pero posteriormente la acepta,
> (2) se defiende injustificadamente de la acción,
> (3) cree que la cantidad reclamada es exagerada y es la única razón que tiene para oponerse a las peticiones del demandante, y no admite su responsabilidad pudiendo limitar la controversia a la fijación de la cuantía a ser concedida,
> (4) se arriesga a litigar un caso del que se desprende prima facie su responsabilidad, y
> (5) niega un hecho que le consta es cierto a quien hace la alegación.
>
> *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022); C.O.R.P. v. S.P.U., 181 DPR 299, 342 (2011); *Blas v. Hosp. Guadalupe*, 1146 DPR 267, 335-336 (1998); *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987).

El antedicho estatuto preceptúa en nuestro esquema procesal la intención de establecer una penalidad a un litigante perdidoso

que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149; *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016). De ahí que, como regla general, establecida la concurrencia de tal conducta, la condena de honorarios resulta ser imperativa.

El juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio. Por tanto, la determinación que en su día emita, ***solo será objeto de revisión si ha mediado abuso de discreción en el ejercicio de su ministerio***. *Colón Santos v. Coop. Seg. Múlt. P.R.,* 173 DPR 170, 188 (2008); *Blás v. Hosp. Guadalupe,* supra, pág. 334; *Fernández v. San Juan Cement Co.*, supra, pág. 722. En dicho contexto, la doctrina vigente reconoce que un tribunal incurre *"en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando [el juez] le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable"*. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). *Pueblo v. Custodio Colón*, 192 DPR 567, 588-589 (2015).

Es por ello que "la determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y ***solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad***". *SLG González-Figueroa v. SLG et al.*, supra, pág. 150; *Maderas Tratadas v. Sun Alliance et al,* 185 DPR 880, 926 (2012); *SLG Flores–Jiménez v. Colberg*, 173 DPR 843, 866 (2008). (Énfasis nuestro).

**III.**

La parte apelante recurre ante nos haciendo varios señalamientos de error. En esencia, aduce que el TPI-SJ se equivocó al sostener la validez del segundo contrato otorgado entre las partes, y no declararlo nulo por fraude. Además, arguye la SBG López-Quiñones y All Systems que no fueron temerarios en su proceder, y que Asociados CPS cobró ilegalmente de más en honorarios. Veamos.

En su *primer señalamiento de error,* alegan los apelantes que el TPI-SJ erró al resolver en la Minuta - Resolución de la vista del 25 de abril de 2019 que a ellos les tocaba demostrar el fraude que alegaban. Además, plantean que este Tribunal ya había decretado la nulidad del segundo contrato. *No les asiste razón.*

Estamos de acuerdo con las apreciaciones del Foro Primario, con relación a la contextualización de las expresiones del Tribunal de Apelaciones en su *"Sentencia"* del 31 de octubre de 2013.[29] Los apelantes entienden que en la misma, el panel hermano en cuestión determinó que el segundo contrato otorgado por las partes era nulo. Sin embargo, queda meridianamente claro que la condición para dejar sin efecto la sentencia original del TPI-SJ era que, devuelto el caso ante sí, el Foro Primario pasara juicio sobre las alegaciones de fraude en el segundo contrato. De hecho, en la cuarta parte de su dictamen, este Tribunal instruyó que se "determinen los hechos específicos sobre la alegación de fraude". La sentencia referida devolvió los procedimientos a un estado más primitivo, reviviendo necesariamente la validez del primer contrato, para que, conforme a las directrices suscritas en su dictamen, el TPI-SJ pasara juicio sobre el segundo contrato. Esto era necesario, ya que el fraude no puede establecerse por meras alegaciones.

---

[29] KLAN201301409.

Por estar íntimamente relacionados el *segundo y tercer señalamiento de error*, los atenderemos en conjunto. Los apelantes argumentan que el Foro Apelado se equivocó aquilatando la prueba, que, según estos, evidenció la nulidad del segundo contrato. Además, arguyen que aun si el mismo hubiese sido válido, los apelados cobraron de más. *No les asiste razón.*

Como expusiéramos previamente, el tribunal sentenciador, que tuvo ante sí la prueba y examinó la misma en el juicio, le merece deferencia. Es decir, sus determinaciones gozan de una presunción de corrección. Enmarcado en nuestro estado de derecho, es harto conocido que rebatir la misma le corresponde a la parte que las impugna. Además de los alegatos de las partes, este Tribunal cuenta con la transcripción del juicio del caso de autos. Luego de examinar detenidamente la misma, entendemos que quedó debidamente establecido que el segundo contrato entre las partes fue pactado con el fin de que Asociados CPS fuera remunerado por labores previamente realizados, a favor de All Systems. Estos últimos eran partes en pleitos judiciales que se encontraban ventilándose, y para quienes los apelados rindieron servicios legales.

Bajo el crisol del derecho previamente esbozado, que circunscribe la validez de los contratos, nos vemos obligados a sostener la validez del segundo contrato. Este último cumple con todos los requisitos para su constitución conforme a derecho.

Con relación a la reiterada alegación de los apelantes sobre el presunto fraude cometido por Asociados CPS, reiteramos que este no se presume. Los apelantes tenían la responsabilidad de probar el mismo en el Foro Primario. Luego de evaluar la prueba en autos, coincidimos con el TPI-SJ que no rebatieron la presunción en contra del fraude. Tampoco colocaron a esta Curia en posición de resolver lo contrario. Incluso, huelga destacar que ambas partes estipularon en la vista del 9 de septiembre de 2016, previo a la celebración del

juicio, que *no hubo fraude en el segundo contrato*. Es decir, ***el fraude temerariamente alegado, nunca fue probado.***

Además, con relación a la cantidad cobrada – el cincuenta por ciento (50%) en honorarios de abogado – la declaración jurada de Eladio López Reyes atiende el asunto. En el precitado documento, este ofrece una explicación para pactar la mencionada cantidad. El apelante expone en su declaración que "autoriza al Tribunal de Primera Instancia, Sala de San Juan, que ordene a la Secretaria a que emita un cheque por $600,000 a favor de [los apelados]".[30]

Por otro lado, si bien es cierto que en los casos de daños y perjuicios la normativa establece que los abogados solo podrán cobrar un máximo de treinta y tres por ciento (33%), no es así para otro tipo de casos. Como explicáramos en el epíteto relevante al derecho de honorarios, nada impide que en un caso de incumplimiento contractual, como el de marras, las partes pacten honorarios contingentes en exceso de treinta y tres por ciento (33%). Así como en el caso de *In re Castro Mesa*, supra, en el caso de autos, los abogados fueron remunerados por una multiplicidad de servicios legales ofrecidos.

Justipreciamos que el segundo acuerdo entre los apelantes y los apelados, configurado y traído a la vida conforme a derecho, subsiste, incluso, con el pacto de honorarios contingentes en exceso al treinta y tres por ciento (33%), por virtud del principio *pacta sunt servanda*. Eladio López Reyes, disipó toda duda que pudiese levantar el cincuenta por ciento (50%) pactado, con su declaración jurada.

En consecución de la estipulación entre las partes, con relación a la ausencia de fraude, y la declaración jurada de Eladio López Reyes, los apelantes no pueden pretender ahora ir en contra de sus propios actos.

---

[30] Apéndice del recurso, pág. 321.

En su *último señalamiento de error* arguyen SBG López-Quiñones y All Systems que el Foro Primario se equivocó al imponerle honorarios de abogado por temeridad. Por entender que el Foro Apelado no abusó de su discreción al imponer los mismos, resolvemos que los apelantes *no les asiste razón*.

La imposición de este tipo de honorarios es un ejercicio discrecional del Foro Apelado. Los apelantes no han rebatido la presunción de corrección que le merece al TPI-SJ su determinación de sancionar por temeridad. Además, se desprende del expediente que la conducta de estos, en efecto, ha sido temeraria. Entendemos que los apelantes han negado la legitimidad del segundo contrato, no empece a los actos llevados a cabo por estos para sostener la validez del mismo. También, han intentado argumentar que los apelados cometieron fraude obstinadamente. Luego de estipular que no se incurrió en fraude en el otorgamiento del segundo contrato, intentaron impugnar el mismo mediante la intención de las partes. Esta conducta contumaz, ha resultado en un litigio innecesario, y desprovisto de fundamentos de buena fe.

**IV.**

Por los fundamentos antes expuestos, *confirmamos la "Sentencia" apelada en su totalidad.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones